UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEARCH CACTUS, LLC,

    Plaintiff,

vs.                                                                                Case No. 10-10046

PEEL INC., and BRIAN DALE,                    HON. AVERN COHN

    Defendants.

_____/

## MEMORANDUM AND ORDER
## DENYING DEFENDANTS' MOTION TO DISMISS (Doc. No. 20)[1]

### I. Introduction

This is a business dispute. Plaintiff Search Catus, LLC (Search Catus) is suing defendants Peel, Inc., and Brian Dale, president of Peel, for their actions arising out a business arrangement whereby Search Cactus provided advertising and lead generating services. The Amended Complaint, which is governing, asserts the following claims:

        I.        breach of agreement,

        II.       quantum meriut,

        III.      account stated,

        IV.      misrepresentation - Dale,

        V.       misrepresentation - Peel,

---

[1]Although this matter was originally scheduled for hearing, the Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

Before the Court is defendants' motion to dismiss under Fed. R. Civ. P. 9(b) and 12(b)(6). Defendants argue that Search Cactus has not properly plead its misrepresentation counts, counts IV. and V.[2] For the reasons that follow, defendants' motion is DENIED.

## II. Background

The following facts are gleaned from the Amended Complaint.

Search Cactus provides on-line marketing services to publishers and advertisers in the form of performance based marketing. It is based in Troy, Michigan. Advertisers place product offers with Search Cactus who in turn, uses publishers to promote the product. In return, advertisers receive sales leads which lead to increased sales of the advertiser's goods.

Peel is based in Illinois. Dale is the president of Peel. During the relevant time, Peel did business under the name Seattle Direct Coffee, among other trade names, selling goods to consumers over the internet.

In October 2006, Peel, as an advertiser, hired Search Cactus to develop advertisements for Peels' products to be published through Search Cactus' publishers. Each time a sales lead clicked on a Peel advertisement generated by Search Cactus, Peel was obligated to pay Search Cactus. The parties memorialized their relationship in an Agreement executed on February 19, 2007. From March 2007 through October 2009, Search Cactus provided Peel with advertising services. In October 2009, Peel

---

[2]Defendants originally sought dismissal of the entire Amended Complaint. After a status conference, however, defendants filed a reply brief stating that they now only seek dismissal of the misrepresentation claims.

2

stopped paying Search Cactus.

In February 2009, Search Cactus learned from an affiliate publisher that the publisher had signed up for a Seattle Direct Coffee offer and the publisher's credit card was charged multiple times by Peel without authorization. At other times in 2009, Search Cactus received complaints that Peel was over billing customers and that customers had not received goods ordered from Peel. Each time Search Cactus learned of a complaint, it contacted Dale, who each time told Search Cactus that the over billing or other problem was a computer glitch. Search Cactus says there was no computer glitch and that defendants engaged in a scheme to defraud its customers.

As a result, Search Cactus says it was damaged by having to pay over $1 million to other publishers and affiliates. Search Cactus also says its business reputation has been damaged as a result of doing business with Peel.

On January 5, 2010, Search Cactus sued Peel and Dale. The original complaint contained four counts: (1) breach of agreement, (2) quantum meriut, (3) account stated, and (4) misrepresentation.

On March 22, 2010, Peel and Dale filed a motion to dismiss, seeking dismissal of the entire complaint.

On April 12, 2010, Search Cactus filed an Amended Complaint, asserting five claims set forth above.

On May 3, 2010, Peel and Dale filed a motion to dismiss the Amended Complaint, again seeking dismissal of all counts.

The parties appeared for a status conference on May 28, 2010. After which, defendants filed a reply brief stating, inter alia, that they are now seeking dismissal of

only the misrepresentation claims.

### III. Legal Standard

A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) tests the sufficiency of a complaint. To survive a Rule 12(b)(6) motion, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Bell Atlantic Corp. v. Twombley, 550 U.S.544, 545 (2007); see also Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1950 (2009) (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Id. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Id. at 1949 (internal quotation marks and citation omitted). This is a rather rigid test which must be carefully applied.

A plaintiff alleging fraud must also meet FED. R. CIV. P. 9(b)'s heightened pleading standard by "stat[ing] with particularity the circumstances constituting fraud or mistake." The threshold test under Rule 9(b) is "whether the complaint places the

defendant on sufficient notice of the misrepresentation, allowing the defendant[] to answer, addressing in an informed way plaintiff's claim of fraud." Coffey v. Foamex L.P., 2 F.3d 157, 162 (6th Cir. 1993) (internal quotations omitted). A plaintiff must allege, at a minimum, "the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme, the fraudulent intent of the defendants, and the injury resulting from the fraud." Id. at 161-62. In other words, a plaintiff must plead each element of a fraud claim with enough specificity so that a defendant can ascertain both the allegedly fraudulent statement as well as the context in which it was made.

Although a fact-intensive inquire is required to determine the sufficiency of a complaint, there are some general guidelines that a court customarily follows. For example, a plaintiff failed to comply with Rule 9(b) when the complaint alleged that defendant corporation told him that "he could sell the Property or refinance the loans in two years, if he had trouble paying the monthly loan payment." King v. Bank of America, Corp., No. 09-12481, 2009 WL 2960425, at *5 (E.D. Mich. Sept. 11, 2009). Plaintiff was required to amend his complaint and include:

> (1) the name of the individual(s) who made the representation (or the name of their employer); (2) where the representation was made, (3) the content of the representation, (4) the fraudulent scheme, (5) the fraudulent intent of the individual(s) who made the representation; and (6) the injury [plaintiff] suffered as a result of the representation."

Id. However, absolute precision is not required and a complaint alleging that defendant made representations during meetings held between October 7, 1996 and January 10, 1997 was found sufficient even though precise dates or locations were not provided.

5

Kukuk v. Fredal, No. 99-74014, 2001 WL 1218557, at *5 (E.D. Mich. Aug. 1, 2001). However, in Kukuk the complaint did specify the individuals who made and heard the alleged misrepresentations. Id at *2. Thus the "time, place, and content" rule in Coffey can be relaxed so long as the complaint provides the defendant with sufficient notice to answer and defend the claim.

## IV. Analysis

Defendants first argue that Search Cactus has failed to plead its misrepresentation claims with particularity. To make out a claim of fraudulent misrepresentation under Michigan law, a plaintiff must show:

> (1) that the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered actual damage.

Rooyakker & Sitz, P.L.L.C. v. Plante & Moran, P.L.L.C., 276 Mich. App. 146, 161 (2007) (citations omitted); see also M&D Inc. v. W.B. McConkey, 231 Mich. App. 22, 27 (1998).

The Amended Complaint is sufficiently specific. A fair reading of the Amended Complaint shows that two fraudulent schemes are alleged. The first is that Peel was defrauding its customers through multiple credit card charges and for not sending them merchandise. The second scheme is that Peel, through Dale, lied to Search Cactus about any complaints when confronted, blaming a computer glitch. Search Cactus alleges that the schemes harmed it because had it known about the first scheme, it would have stopped doing business with Peel. Search Cactus also says it suffered

6

damages in reliance on Dale's assurances in the form of lost customers and harm to its business reputation by having done business with Peel.

Although Search Cactus' Amended Complaint could describe the facts surrounding Peel's misrepresentation with more precision, it is sufficient under Fed. R. Civ. P. 9(b). The Amended Complaint alleges that Dale made many statements to Search Cactus as to how Peel was dealing with its customers which Search Cactus says were false. These are detailed in paragraph 34. Search Cactus has also alleged that in response to Search Cactus' inquiries about customer complaints, Dale assured Search Cactus that any complaints were the result of a computer glitch and that all of Dale's assurances were false. Amended Complaint at ¶ 21, 23. Thus, Search Cactus has identified the fraudulent statements and the speaker - Dale. While the Amended Complaint fails to specify the exact date of the misrepresentations, it does allege the time period when the parties were doing business and more specifically says that two of the assurances were in February of 2009. Amended Complaint at 16. Search Cactus also explains why the statements were fraudulent. Attached as Exhibit E to the Amended Complaint is a complaint filed against Peel and Dale by the Attorney General of Illinois which describes Peel's scheme to defraud consumers. Moreover, Peel is mistaken in asserting that Search Cactus has failed to plead intent to defraud. The Amended Complaint alleges that Peel intended to defraud consumers, ¶ 44, and also alleges that it intended to defraud Search Cactus. Paragraph 67 states that "Dale used the corporate form to perpetrate a fraud upon consumers <u>and Search Cactus</u> and its affiliates." The import of the Amended Complaint is that Dale intentionally and falsely told Search Cactus that the alleged problems were computer glitches in order to be able

7

to continue using Search Cactus's services and thereby continue its scheme of defrauding consumers. The Amended Complaint further alleges that Search Cactus relied on the misrepresentations, especially those as to the computer glitch, and that Search Cactus was damaged "by direct and indirect loss of its own customers and damaged business reputation within the on-line marketing community." Paragraph 71. Overall, the Amended Complaint contains well-pleaded factual assertions that are sufficient to satisfy the requirements of Fed. R. Civ. P 12(b)(6) and 9(b) with respect to Search Cactus's misrepresentation claims.

    Peel also says that Search Cactus's misrepresentation claims are barred because the parties' relationship is governed by a contract. Although not argued as such, this goes to application of the economic loss doctrine. A well-pleaded claim of fraud may be barred by the economic loss doctrine when it arises out of a contractual relationship. The purpose of the economic loss doctrine is to prevent contract law from "drown[ing] in a sea of tort." Neibarger v. Universal Cooperative, Inc., 439 Mich. 512, 528 (1992). The doctrine "provides that [w]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only economic damages." Id. at 520. While many disputes can be framed in either tort or contract terms, "contract principles . . . are generally more appropriate for determining claims for consequential damages that the parties have, or could have, addressed in their agreement." Id. at 521. Initially, Michigan only applied the economic loss doctrine to unintentional tort claims such as negligence. Huron Tool and Engineering Co. v. Precision Consulting Services, Inc., 209 Mich. App. 365, 368 (1995). The Huron Tool court extended the economic loss doctrine

8

to include intentional torts, but held that it did not bar a claim of fraud in the inducement when the alleged fraud was extraneous to the contractual dispute. Id. at 375.

The applicability of the economic loss doctrine to a claim of fraud turns on whether the parties could have resolved the issue through a contract provision.[3] Analyzing a claim of fraud in the inducement, the Huron Tool court stated:

> Fraud in the inducement presents a special situation where parties to a contract appear to negotiate freely – which normally would constitute grounds for invoking the economic loss doctrine – but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior. In contrast, where the only misrepresentation concerns the quality or character of the goods sold, the other party is still free to negotiate warranty and other terms to account for possible defects in the goods.

Id at 372-73. Thus the proper inquiry when applying the economic loss doctrine to a fraud claim is whether a plaintiff could have protected its interests through the contract or whether the plaintiff was prevented from making a free and informed decision due to the defendant's fraud.

Here, the misrepresentations are outside of Peel's contractual obligations. Search Cactus alleges that it is precisely because of Dale's assurances of a computer glitch that it continued to do business with Peel and because of those false assurances,

---

[3]One court has suggested that the economic loss doctrine bars all fraud claims except fraud in the inducement. Huron Tool, 209 Mich. App. at 371 ("Courts generally have distinguished fraud in the inducement as the only kind of fraud claim not barred by the economic loss doctrine. We believe that this distinction is warranted in light of the rationale of the economic loss doctrine."). However, a careful analysis suggests that application of the economic loss doctrine should be based on the distinction between "fraud extraneous to the contract and fraud interwoven with the breach of contract." Id. at 373.

9

it was prevented from discovering the real fraud Peel was perpetrating. Search Cactus also alleges that the fraud harmed its reputation in the community, independent from the financial harm it suffered as a result of Peel stopping payment. Thus, Search Cactus's claims are not barred by the economic loss doctrine.

SO ORDERED.

                                                  S/Avern Cohn
                                                  AVERN COHN
                                                  UNITED STATES DISTRICT JUDGE

Dated: August 17, 2010

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, August 17, 2010, by electronic and/or ordinary mail.

                                                 S/Deborah R. Tofil
                                                Relief Case Manager, (313) 234-5160